UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY § <br> and § <br> NATIONAL FIRE & MARINE § <br> INSURANCE COMPANY, § <br>  § <br>     Plaintiffs, § <br> v. § <br>  § <br> RONALD DRUMMER, d/b/a TRES § <br> AMIGOS TOURS, AUTOBUSES § <br> LUCANO, INC., AND OFELIA § <br> MARTINEZ, § <br>  § <br>     Defendants. § | CIVIL ACTION NO. H-06-1113 |

## MEMORANDUM AND ORDER

Pending before the Court are motions for summary judgment filed by Plaintiffs Lexington Insurance Company and National Fire & Marine Insurance Company, Defendant Autobuses Lucano, Inc., and Defendant Ofelia Martinez. After considering the parties' filings and the applicable law, the Court finds that Plaintiffs' summary judgment motion, Docket No. 38, should be **GRANTED.** Defendants' summary judgment motions, Docket Nos. 48 and 49, should be **DENIED.**

I.  BACKGROUND

This consolidated declaratory judgment case arises from a dispute over insurance coverage in an underlying negligence action. Plaintiff insurers Lexington Insurance Company and National Fire & Marine Insurance Company seek a declaration of their rights under policies that they issued to Defendant Ronald Drummer, d/b/a Tres Amigos Tours.

1

The following presentation of facts has been culled primarily from Lexington's Original Complaint. Lexington and National Fire are national insurance companies that do business in Texas. Ronald Drummer is a Texas resident. Autobuses Lucano, Inc. is a Dallas-based motor coach carrier company. Ofelia Martinez is a resident of North Carolina and the plaintiff in an underlying negligence suit at the center of the dispute among the parties.

In the negligence case, Martinez asserts that she bought a ticket to travel from Houston, Texas to Raleigh, North Carolina on a commercial bus owned by Autobuses and MCI Financial Services, and leased by Ronald Drummer d/b/a Tres Amigos Tours. On September 20, 2002, while *en route* in Mississippi, the driver and replacement driver allegedly attempted to switch seats while the bus was moving. The drivers lost control, and the bus went off the road and hit a tree. Martinez contends that she suffered several serious injuries, necessitating repeated and prolonged treatment and incurring substantial medical costs. Martinez brought a negligence action in the Southern District of Mississippi against the drivers, Tres Amigos Tours, Autobuses, and MCI Financial (who appears to have loaned money to Autobuses to purchase commercial buses).[1]

At trial, Drummer and Autobuses offered competing accounts of their business relationship. It appeared to be undisputed that during peak travel periods Autobuses would engage Drummer, either directly or through another company, to pick up some of the passenger overflow. Autobuses asserted that sometime in 2002 Drummer offered to enter into a joint venture with Autobuses to operate some of their motor coaches. In July 2002, Autobuses and Drummer signed an equipment lease agreement effecting the

---

[1] The suit is docketed under Cause No. 3:04-cv-45WSN (*Ofelia Martinez v. Tres Amigos Tours & Autobuses Lucano, Inc.*).

transfer of over fourteen buses, owned by Autobuses and financed by MCI Financial Services, to Drummer, including the bus involved in the September 2002 accident. Under the agreement, Drummer would be responsible for securing adequate liability insurance coverage for the leased buses. Drummer, on the other hand, denied that any lease was ever intended or executed, at least in part because MCI never accepted the agreement. He contended that he was neither the operator nor the lessee of the bus at the time of the accident, but rather that Autobuses owned, operated, and maintained the bus.

In January 2006, the Mississippi jury returned a verdict for Martinez, finding that the drivers were negligent, Autobuses was in control of the bus, and Drummer was in control of and managed the bus or was a joint venturer. The jury awarded $5,000,000 in actual damages against Autobuses and Drummer, and $4,000,000 in punitive damages against Autobuses.[2]

In February 2006, Autobuses claimed through counsel that it was entitled to coverage and defense under insurance policies covering Ronald Drummer d/b/a Tres Amigos. Two policies had been issued to Drummer for the period from August 20, 2002 to August 20, 2003. National Fire issued a primary commercial business auto coverage policy with a primary limit of $1,000,000 for each occurrence. Drummer also obtained an excess following form policy from Lexington, with a limit of $4,000,000 for each occurrence in excess of the initial $1,000,000 of coverage provided by National Fire.[3] Both policies were cancelled before they expired but after the September 2002 accident.

---

[2] In September 2006, the trial court vacated the judgment and ordered a new trial when it was revealed that Autobuses and Martinez had engaged in a "Mary Carter" agreement. Under the agreement, Autobuses would assist Martinez in obtaining a verdict against it, Martinez would not execute the resulting judgment, and Autobuses would assign to Martinez its alleged "bad faith" rights against an insurance carrier. Therefore, there is currently no underlying judgment against Autobuses or Drummer.

[3] Because the excess policy is "following form," it provides coverage under the same terms as the primary policy.

Both insurers concede that the facts of the underlying case invoke their duty to defend Drummer, the named insured.[4]  However, they deny that coverage extends to Autobuses.  In order to clarify its rights, Lexington filed this case in April 2006.  In May 2006, Autobuses brought its own federal declaratory judgment action in the Southern District of Mississippi, naming Lexington and National Fire as defendants.  Because both cases revolve around the issue of whether the Lexington and National Fire policies cover Autobuses, they were consolidated before this Court in November 2006.  Plaintiffs seek a declaration that they have no duty to defend or indemnify Autobuses, as well as attorney's fees under the Texas Declaratory Judgment Act.

Lexington, National Fire, Autobuses, and Martinez now move for summary judgment on the question of whether Plaintiffs are obligated, under the two policies issued to Drummer, to defend or indemnify Autobuses in Martinez's underlying negligence suit.

## II. ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented.  FED. R. CIV. P. 56(c).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

---

[4] Lexington's Original Complaint denies that coverage exists even for Drummer for the September 2002 accident, ostensibly because a provision was adopted excluding the driver of the bus.  However, now that the cases have been consolidated, Lexington agrees that the excess coverage is co-extensive with and governed by the primary policy's coverage, and appears no longer to dispute its duty to defend Drummer.

4

law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted).  A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party.  *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Id*.

### B. The National Fire and Lexington Policies

Plaintiffs argue that although the primary and excess policies issued by Lexington and National Fire obligate Plaintiffs to defend and possibly indemnify Drummer, they do not give rise to any duties of coverage vis-à-vis Autobuses.  The Court agrees that Autobuses is not insured under either policy.  Therefore, summary judgment should be granted to Plaintiffs.

The Fifth Circuit has clearly explained the method that a court should use in determining an insurer's duty to defend, in a case governed by Texas law:[5]   "Under Texas law, an insurer's duty to defend is determined by the 'eight corners' doctrine, or 'complaint allegation rule'; in other words, the court looks only to the allegations in the pleadings and the language of the insurance policy."  *Lincoln General Ins. Co. v. Reyna*, 401 F.3d 347, 350 (5th Cir. 2005).  Further, "[t]he 'four corners' of the complaint must allege facts that, if taken as true, could possibly assert a claim within the scope of coverage in the 'four corners' of the insurance policy; otherwise, an insurer is not legally required to defend a suit against its insured."  *Reyna*, 401 F.3d at 350.  The Court's first task, then, is to scrutinize the policies and Martinez's underlying complaint.

---

[5] Neither party disputes that Texas law applies to the construction of these insurance policies.  "The construction of insurance policies, and, therefore, the scope of coverage, are matters of state law."  *T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 674 (5th Cir. 2001).

The complete National Fire policy ("Policy") is attached to Defendants' motions as Exhibit 1,[6] and the Lexington excess policy is provided at Exhibit 7.[7] Because the Lexington policy is following form and adopts all National Fire provisions defining the scope of coverage, the Court need only examine the National Fire policy. The Policy provides that National Fire "will pay all sums an insured legally must pay as damages because of **bodily injury** or **property** damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered **auto**." Policy at NF036 (emphasis in the original). The question before the Court is whether Autobuses counts as "an insured."

As an initial matter, it is clear that Autobuses is not identified on the face of the Policy as a *named* insured; the only named insured is "Ronald Drummer dba Tres Amigos Tours." Policy at NF022. Autobuses does not argue to the contrary, but claims instead that it is an "additional insured." The only Policy document to which Autobuses points to corroborate this contention is the "Additional Insured – Lessor" form, which provides that "[f]or a covered **auto** that is a **leased auto** WHO IS AN INSURED is changed to include as an insured the lessor named in the Schedule or in the Declarations." *Id.* at NF032 (emphasis in the original). Autobuses is not named as an "Additional Insured (Lessor)" on the form, however; rather, only MCI/Canadian Imperial Bank of Commerce is listed.[8] Autobuses does not provide any additional schedule, declaration, or other policy document indicating that Autobuses is an additional insured.

---

[6] Defendants' responses to Plaintiffs' motion for summary judgment and Defendants' own summary judgment motions are virtually identical to one another, and append the same exhibits. Therefore, the Court will not distinguish among the four motions.

[7] Although there was previously a dispute on this point, Autobuses and Martinez have stipulated for the purpose of these summary judgment motions that the excess policy at Exhibit 7 is the applicable policy.

[8] The "Loss Payable Clause" on the Additional Insured – Lessor form states that "[w]e will pay you and the lessor named in this endorsement for loss to a **leased auto**, as interest may appear." Policy at NF033.

Instead, Autobuses and Martinez submit a Certificate of Liability Insurance issued by the insurance agent handling Drummer's policies. Defs.' Resp., Ex. 8. The Certificate states that "Autobuses Lucano, Inc. is listed as an Additional Insured see schedule attached." The Certificate, however, does not establish Autobuses as an additional insured. First, Defendants have provided no "schedule attached" identifying Autobuses as an additional insured. Second, the Certificate itself states that it "confers no rights upon the certificate holder" and "does not amend, extend or alter the coverage afforded by the policies below." Finally, Plaintiffs argue persuasively that under Texas law, certificates of insurance (particularly those containing similar limiting language) do not alter the terms of an insurance policy. *E.g.*, *Campbell v. Shura*, 80 Fed. Appx. 901, 903-04 (5th Cir. 2003) (holding that "a publicly filed certificate of insurance is not the equivalent of an insurance policy under Texas law," and does not provide an independent basis of liability); *TIG Ins. Co. v. Sedgwick James of Washington*, 184 F. Supp. 2d 591, 597-98 (S.D. Tex. 2001) (holding that a certificate of insurance containing limiting language does not amend an insurance policy to add an additional insured, and citing Texas cases). Indeed, Defendants stop short of arguing that the Certificate itself establishes coverage for Autobuses. Defs.'s Reply 4 ("With respect to the Certificate of Liability Insurance . . . these materials have not been introduced to establish coverage . . .").

The Court also finds no ambiguity in the "Additional Insured – Lessor" provision. Defendants argue strenuously that "the absence of Autobuses' name in this section of the endorsement (at most) constitutes an ambiguity in the policy language that is to be

---

Again, only MCI/Canadian Imperial Bank of Commerce is identified as a Loss Payee on the "Loss Payable Clause" form. *Id.* at NF031.

construed liberally in favor of Autobuses Lucano, Inc. and strictly construed against Plaintiffs." Defs.' Reply 6. It appears to the Court to be unambiguous, however, that Autobuses is neither identified nor listed as an additional insured on any *Policy document, schedule, or declaration*, and that the only entity named as an additional insured is MCI Financial. Defendants urge the Court to "read the policy as a whole," perhaps suggesting that the Court analyze the Policy in light of the Certificate of Insurance, but as discussed above, the Certificate is not part of the Policy, and has no effect on the scope of coverage. While it is possible that Autobuses was accidentally left off the Policy,[9] that omission does not introduce ambiguity into the Policy itself.[10] The Court finds that Autobuses was not an additional insured.

Autobuses does not argue that it is covered under any other provision in the Policy, nor could it credibly do so. Under Section II.A.1.b of the "Liability Coverage" section, coverage could extend to "[a]nyone else while using with your permission a covered **auto** you own, hire or borrow . . .". Policy at NF036. Autobuses does not claim to have been "using" the bus at the time of the accident, however, and Martinez's underlying complaint alleges only that Autobuses owned and leased the bus. Autobuses is also not included under Section II.A.1.c, which covers "[a]nyone liable for the conduct of an **insured** described above but only to the extent of that liability. However, the owner or anyone else from whom you hire or borrow a covered **auto** is an insured only if that **auto** is a **trailer** connected to a covered **auto** you own." *Id.* Autobuses' liability for

---

[9] To be clear, Defendants have introduced no evidence that such an oversight occurred.

[10] Defendants also argue that the following language from the Additional Insured – Lessor form is ambiguous: "Any **leased auto** designated or described in this Schedule or in the Declarations will be considered a covered **auto** you own and not a covered **auto** you hire or borrow." Policy at NF032. While Defendants may not be able to explain the exact import of this clause, in the Court's view, it is irrelevant to the definition of "WHO IS AN INSURED."

8

Drummer's conduct has been neither argued nor established, and it is plain that the vehicle involved in the September 2002 accident was not a trailer.

Defendants emphasize instead the fact that the Policy covers the subject bus, which Plaintiffs do not dispute. *See* Policy at NF024 (listing Charter Bus 1630 on the "Schedule of Covered Autos"). Whether or not the Policy covers the bus, however, is beside the mark in assessing whether Plaintiffs owe a duty to any party other than Drummer for any liability event involving the bus. Defendants also introduce the alleged lease agreement between Drummer and Autobuses, under which "Lessee shall, at all times, keep the Coach or Coaches insured against loss or damage . . . and will name Lessor and Canadian Imperial Bank of Commerce c/o MCI Financial Services, Inc. as Additional Insureds." Defs.' Resp., Ex. 2 at MCI 00003. Even assuming the lease is valid, however, it has absolutely no effect in defining the scope of coverage of an insurance policy, which, incidentally, had not even been purchased at the time the lease was executed.

Defendants also submit a report by their expert, who opines that Autobuses was an additional insured under the Policy. *Id.*, Ex. 5. Besides the fact that consulting an outside expert plainly violates the "eight corners" rule, the Court sees no reason to substitute a third party's legal analysis for its own, and has disregarded the report. Finally, Defendants argue that the Court must give effect to the "intent of the parties" to include Autobuses as an additional insured. The Court observes again that Defendants have not conclusively demonstrated that the parties intended Autobuses to be an additional insured. *See supra* note 9. More importantly, the Court's precise task is "to give effect to the parties' intent as expressed in the policy's *plain language*." *De*

9

*Laurentis v. United Servs. Auto. Ass'n*, 162 S.W.3d 714, 722-23 (Tex. App. 2005) (emphasis added); *see also Valley Forge Ins. Co. v. Hicks Thomas & Lilienstern, L.L.P.*, 174 S.W.3d 254, 258 (Tex. App. 2004); *Founders Commercial, Ltd. v. Trinity Universal Ins. Co.*, 176 S.W.3d 484, 490 (Tex. App. 2004). The plain language of the *Policy documents* indicates only one named insured and one additional insured, neither one of whom is Autobuses. Therefore, Autobuses is not covered under the Policy, and neither National Marine nor Lexington owe Autobuses a duty of defense.

For these reasons, Plaintiffs also have no duty to indemnify Autobuses. The duty to indemnify, which is narrower than the duty to defend, "is not based on the third party's allegations, but upon the actual facts that underlie the cause of action and result in liability." *Northfield. Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528-29 (5th Cir. 2004). The scope of the duty can be determined before the underlying facts have been proven at trial, however, when "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Id.* (citation and internal quotation marks omitted). The Court has found that the primary and excess policies simply do not cover Autobuses. The underlying complaint, which alleges negligent supervision, leasing, hiring, retention of unfit drivers, and failure to warn against Autobuses, would give rise to no fact demonstrating that Autobuses is, in fact, covered by the two policies. Therefore, Plaintiffs owe no duty at all to Autobuses under the policies.

### C. Estoppel

Autobuses and Martinez argue in the alternative that Plaintiffs are estopped from denying coverage to Autobuses. Defendants acknowledge the general rule that estoppel

does not create insurance coverage where none exists under the policy. *E.g.*, *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 761 (5th Cir. 2002); *Royal Maccabees Life Ins. Co. v. James*, 146 S.W.3d 340, 350 (Tex. App. 2004), However, an exception applies where an insurer assumes an insured's defense without first obtaining a reservation of rights or a non-waiver agreement, and with knowledge of facts indicating non-coverage. *E.g.*, *Farmers Tex. County Mut. Ins. Co. v. Wilkinson*, 602 S.W.2d 520, 521-22 (Tex. App. 1980).

Defendants argue at length that "Lexington determined that it would defend the cause of action against Drummer and Autobuses Lucano, Inc.," and that "[w]ithout warning, after being lulled through an entire suit and trial on the merits, National Fire & Marine and Lexington determined they would like to deny their insureds the liability and defense coverage they thought existed." Defs.' Resp. 16. Plaintiffs counter that while National Fire defended Drummer, the named insured, during the underlying suit, "*the Insurers did not assume Autobuses' defense.*" Pls.' Mot. Summ. J. 7 (emphasis in the original). Indeed, Autobuses introduces no evidence demonstrating that National Fire defended Autobuses as well as Drummer. On the other hand, Plaintiffs submit a December 23, 2005 letter from National Fire to counsel for Autobuses, stating that "Autobuses is not an insured under the policy of insurance issued by National Fire to Ronald Drummer dba Tres Amigos Tours. Because Autobuses is not an insured under the Policy, National Fire is declining your tender of defense." Pls.' Resp., Ex. E. The Court finds that Plaintiffs are not estopped from denying coverage to Autobuses. Because Autobuses is not covered under either the National Fire or Lexington policies,

11

Plaintiffs are entitled to summary judgment. Summary judgment should be denied to Defendants Autobuses and Martinez.[11]

### D. Attorney's Fees and Costs

Defendants move for attorney's fees under the Texas Declaratory Judgment Act and request that the hold a hearing regarding same. Under the Act, "the court may award costs and reasonable and necessary attorney's fees as equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 2007). The Court determines that each party shall bear its own costs and fees.

### III.  CONCLUSION

Plaintiffs' motion for summary judgment is **GRANTED.**  Defendants' motions for summary judgment are **DENIED.**  Judgment is hereby **ENTERED** for Plaintiffs.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 11th day of June, 2007.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**

---

[11] Because Defendants' summary judgment motions are virtually identical to their summary judgment responses, the Court need not address them separately.